1

2

3

4

5

6        UNITED STATES DISTRICT COURT
         WESTERN DISTRICT OF WASHINGTON
7                    AT TACOMA

DAVID B.,
8
                           Plaintiff,        Case No. C18-6042 RSM
9
        v.                                   **ORDER AFFIRMING THE**
                                             **COMMISSIONER'S FINAL**
10                                           **DECISION AND DISMISSING THE**
COMMISSIONER OF SOCIAL SECURITY,             **CASE WITH PREJUDICE**
11
                           Defendant.
12

13        Plaintiff seeks review of the denial of his application for Supplemental Security Income.

14  Plaintiff contends the ALJ erred by rejecting his testimony, two lay witnesses' statements, and

15  three medical opinions.  Dkt. 13.  As discussed below, the Court **AFFIRMS** the Commissioner's

16  final decision and **DISMISSES** the case with prejudice.

17                                **BACKGROUND**

18        Plaintiff is currently 51 years old, has a marginal education, and has worked as a truck

19  driver, taxi driver, and lubrication technician.  Dkt. 9, Administrative Record (AR) 663.  Plaintiff

20  applied for benefits in August 2012, alleging disability as of April 1, 2012.  AR 70.  Plaintiff's

21  application was denied initially, on reconsideration, and by a March 2014 ALJ decision.  AR 69,

22  80, 24-34.  Plaintiff appealed to this court, which remanded because the ALJ erred by rejecting

23

Plaintiff's testimony and a lay witness statement.  AR 766-80.  On remand, after the ALJ

conducted hearings in October 2017 and February 2018, the ALJ issued a decision finding

Plaintiff not disabled.  AR 693, 675, 646-65.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process set forth in 20 C.F.R. § 416.920, the

ALJ found:

**Step one:**  Plaintiff has not engaged in substantial gainful activity since the August 2012
application date.

**Step two:**  Plaintiff has the following severe impairments: chronic obstructive pulmonary
disease (COPD); status post small bowel resection, with partial bowel obstruction; and
degenerative disc disease of the cervical spine, status post discectomy and fusion.

**Step three:**  These impairments do not meet or equal the requirements of a listed
impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1.

**Residual Functional Capacity:**  Plaintiff can perform less than the full range of light
work.  He cannot climb ladders, ropes, or scaffolds.  He cannot be exposed to hazards,
dusts, odors, fumes, or gases.  He can occasionally stoop and crouch.  He requires a
sit/stand alternative, defined as the ability to change position after 30 to 60 minutes for 3
to 5 minutes while remaining on task.

**Step four:**  Plaintiff cannot perform past relevant work.

**Step five:**  As there are jobs that exist in significant numbers in the national economy that
Plaintiff can perform, he is not disabled.

AR 649-65.  The Appeals Council denied Plaintiff's request for review, making the ALJ's

decision the Commissioner's final decision.  AR 1.

## DISCUSSION

This Court may set aside the Commissioner's denial of Social Security benefits only if

the ALJ's decision is based on legal error or not supported by substantial evidence in the record

as a whole.  *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017).  Each of an ALJ's findings

must be supported by substantial evidence. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for evaluating evidence, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the ALJ. *Thomas v. Barnhart*, 278 F.3d 947, 954, 957 (9th Cir. 2002). When the evidence is susceptible to more than one interpretation, the ALJ's interpretation must be upheld if rational. *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005). This Court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

**A.     Plaintiff's Testimony**

Plaintiff testified that he has nausea and abdominal pain about three to five days per week. AR 716, 719. He has been hospitalized about three times for abdominal blockages. 721-22. Every day he has diarrhea about four times. AR 732. Plaintiff has chronic neck pain that makes his neck stiffen and his fingers tingle and burn. AR 716, 724. He has trouble grasping with his left hand. AR 733. His COPD is a problem if he walks a lot. AR 717. He can walk about a block before needing to rest for four or five minutes. AR 727-28. He has no issues with sitting or standing. AR 728, 731. The heaviest thing he lifts is a gallon of milk. AR 728. Plaintiff has problems with short-term memory, concentration, and completing tasks. AR 729. He started counseling because he was very depressed and did not want to live anymore, but antidepressant medication helped. AR 726-27.

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 3

Where, as here, an ALJ determines a claimant has presented objective medical evidence establishing underlying impairments that could cause the symptoms alleged, and there is no affirmative evidence of malingering, the ALJ can only discount the claimant's testimony as to symptom severity by providing "specific, clear, and convincing" reasons that are supported by substantial evidence. *Trevizo*, 871 F.3d at 678. The ALJ discounted Plaintiff's testimony because it was inconsistent with his daily activities and the evidence in the overall record, and because Plaintiff's impairments improved when he complied with his doctor's recommendations. AR 654, 662.

The Commissioner argues that the ALJ also rejected Plaintiff's testimony because Plaintiff had not quit smoking tobacco and thus failed to comply with his doctors' recommendations. Dkt. 14 at 10. But the ALJ only mentioned the failure to quit smoking in the context of determining that Plaintiff was not disabled even with symptoms worsened by smoking. AR 662-63. This was not a reason to reject Plaintiff's testimony.

### 1. Activities

An ALJ may discount a claimant's testimony based on daily activities that either contradict his testimony or that meet the threshold for transferable work skills. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). The ALJ points to treatment notes stating that Plaintiff is "able to do activities of daily living without limitations." AR 402, 428, 542; AR 662. The activities are not described. The ALJ also points to an examining doctor's note that Plaintiff reported doing household chores such as washing dishes and occasional grocery shopping. AR 437; AR 661. The duration of the activities is not described. The Commissioner points to Plaintiff's self-report that he has no problem with personal care such as dressing and using the toilet, that he spends 10 minutes a day preparing food and 10 minutes once a week doing house

and yard work, and that he can grocery shop for one hour.  AR 220-22, 977.  None of these activities contradict Plaintiff's testimony and none are transferable work skills.  The ALJ noted that Plaintiff reported playing video games, and concluded that "implies the ability to handle, finger, and feel frequently."  AR 662 (citing AR 617).  But Plaintiff only testified that he has lost hand strength, not fine movement.  AR 733 (he has "trouble [g]rabbing stuff" and "bad grip").  None of these activities were clear and convincing reasons to discount Plaintiff's testimony.

However, the ALJ also cited a treatment record stating the Plaintiff "plan[ned] on going for a 54 mile bike ride with his brother" in April 2014, and another record in March 2016 stating that Plaintiff "went on a bik[e] ride."  AR 2193, 2308.  Plaintiff argues that there is no evidence he actually went on a 54-mile bike ride.  Dkt. 15 at 8.  Regardless, the April 2014 note is evidence that Plaintiff presented himself as capable of a very long bike ride, and the March 2016 note is evidence that Plaintiff actually completed a bike ride, although the distance is unknown.  The ALJ reasonably inferred that bike riding was inconsistent with Plaintiff's testimony that his COPD is "a problem if [he] walk[s] a lot" and exercise makes him "short of breath."  AR 717.  Plaintiff stated in a March 2016 function report that bike riding was an activity he could do before his impairments that he can no longer do.  AR 977.  Yet, that same month, he told a treatment provider that he went bike riding on two separate occasions.  AR 2307-08.  Plaintiff's activity contradicted his testimony and was therefore a clear and convincing reason to discount his testimony.

## 2.    Objective Medical Evidence

While symptom testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity" and disabling effects of the symptoms.  *Rollins v. Massanari*, 261 F.3d

853, 857 (9th Cir. 2001) (citing 20 C.F.R. § 404.1529(c)(2)). The ALJ cited normal respiratory findings, which undermined Plaintiff's testimony of severe shortness of breath with walking or exercise. *See* AR 403-04, 448, 608, 1075, 1293, 1563, 2217, 2226. Normal abdominal examinations undermined Plaintiff's allegations of disability due to bowel problems. AR 404, 448, 543, 608, 1563, 2215, 2226. Electrodiagnostic testing showing only "subtle" evidence of a cervical radiculopathy and "no strong electrodiagnostic evidence of carpal tunnel syndrome" undermined Plaintiff's allegations of disabling neck and wrist symptoms. AR 608.

Plaintiff argues the ALJ "cherry-picked" findings, but fails to identify any contradictory records or demonstrate that the weight of the evidence contradicts the ALJ's conclusions. Dkt. 13 at 16; Dkt. 15 at 8. Plaintiff argues that the ALJ performed clinical analyses, "playing doctor." Dkt. 13 at 16. But the ALJ did not analyze raw clinical data; rather, the ALJ relied on doctors' own analyses of the data as, for example, "normal," only "mildly abnormal," or showing "subtle" abnormalities. *See*, *e.g.*, AR 404, 448, 608. Plaintiff has not shown any error.

Lack of corroboration by objective medical evidence was another valid reason to discount Plaintiff's testimony.

### 3. Improvement with Treatment

Impairments that can be "controlled effectively" by medication or treatment are not considered disabling for purposes of determining eligibility for Social Security benefits. *See Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). However, "'doing well for the purposes of a treatment program has no necessary relation to a claimant's ability to work or to her work-related functional capacity.'" *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) (quoting *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001)).

The ALJ found that Plaintiff's "impairments improve when he complies with his doctor's

recommendations regarding diet and smoking cessation." AR 662. But the records the ALJ cited do not refer to smoking cessation and, regarding diet, only show that doctors recommended small meals because large meals worsened abdominal pain. AR 2059, 2101. This does not show that eating small meals resolved Plaintiff's abdominal symptoms.

The ALJ also found that neck surgery effectively controlled Plaintiff's neck impairments. AR 662. This finding was supported by substantial evidence. Four months after the surgery, Plaintiff reported "no significant complaints of neck or arm pain" and only "minor complaints of tingling in his left hand as well as some muscle tightness in his posterior neck." AR 1075. That treatment controlled Plaintiff's neck impairment effectively was a clear and convincing reason to discount his testimony as to neck impairments.

### 4. Harmless Error Analysis

Although the ALJ provided some erroneous reasons to discount Plaintiff's testimony, the error was harmless because the ALJ provided the clear and convincing reasons that Plaintiff's activities contradicted his testimony, and his neck impairment was controlled effectively by treatment. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1163 (9th Cir. 2008) (inclusion of erroneous reasons to discount claimant's testimony was harmless because "remaining valid reasons supporting the ALJ's determination are not 'relatively minor'"). Lack of support from the medical evidence further bolstered the ALJ's determination.

The Court concludes the ALJ did not err by discounting Plaintiff's testimony.

### B. Medical Opinions

An examining physician's opinion is generally entitled to greater weight than a nonexamining physician's opinion. *Garrison*, 759 F.3d at 1012. An ALJ may only reject the uncontradicted opinion of an examining doctor by giving "clear and convincing" reasons. *Revels*

*v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017).  Even if an examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by stating "specific and legitimate" reasons.  *Id.*  The ALJ can meet this standard by providing "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  *Id.* (citation omitted).  "The ALJ must do more than offer his conclusions.  He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d at 725.

### 1.  Thomas Gritzka, M.D.

In December 2014, orthopedic surgeon Dr. Gritzka reviewed Plaintiff's medical records and performed a physical examination.  AR 633-42.  He diagnosed Plaintiff with "not only a cervical condition but … a complex general surgical and abdominal condition as well as a background history of chronic depression and learning dysfunction."  AR 641.  Dr. Gritzka opined that since August 2012 Plaintiff had been unable to sustain even sedentary full-time work.  AR 641.

The ALJ discounted Dr. Gritzka's opinions because his evaluation was not "independent," his findings were contradicted by treatment notes, his opinions relied heavily on Plaintiff's noncredible self-reports, and his mental health opinions were unsupported by clinical findings.  AR 659-60.

Plaintiff argues that Dr. Gritzka's opinions are "uncontroverted" because they were only contradicted by the opinions of state agency nonexamining doctor Guillermo Rubio, M.D., which the ALJ rejected, and therefore the ALJ was required to provide "clear and convincing" reasons to discount Dr. Gritzka's opinions.  Dkt. 13 at 9.  The ALJ discounted Dr. Rubio's opinion that Plaintiff could perform medium exertional work.  AR 659.  Nevertheless, Dr. Rubio's opinions

conflicted with Dr. Gritzka's and therefore the ALJ was entitled to reject either opinion, or both, by stating specific and legitimate reasons. Plaintiff suggests that Dr. Rubio's opinions are less reliable because they were given two years before Dr. Gritzka's, but both opinions were issued within the relevant time period between Plaintiff's alleged onset date and the Commissioner's final decision. There is no rule requiring ALJs to prefer later opinions.

### a) Independence

The ALJ noted that "[t]he records for Dr. Gritzka's review were provided by the claimant's attorney…." AR 659. Yet there is no suggestion that the records were inaccurate, incomplete, or misleading in any way. "An examining doctor's findings are entitled to no less weight when the examination is procured by the claimant than when it is obtained by the Commissioner." *Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1995). The fact that Plaintiff's attorney provided records for Dr. Gritzka to review was not a reason to discount Dr. Gritzka's opinions.

The ALJ also stated that "Dr. Gritzka went so far as to 'vouch' for the claimant's credibility, at odds with expectations for an independent medical examination." AR 659. In response to "questions in the letter of referral for this assignment," Dr. Gritzka wrote, "I do not think the examinee is a malingerer." AR 641. There is nothing improper about Dr. Gritzka responding to a request to provide his professional opinion as to whether Plaintiff was malingering. A physician's estimation of a claimant's believability is often relevant. *See, e.g.*, *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008) (ALJ errs by rejecting doctor's opinion based on claimant's complaints "where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations"); *Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001) (ALJ erred in rejecting portions of doctor's report that the

1  doctor "deemed to be reliable").

2  Lack of independence was not a specific and legitimate reason to discount Dr. Gritzka's

3  opinions.

4  **b)  Mental Health**

5  The ALJ discounted Dr. Gritzka's opinions in part because he "factored in … the

6  claimant's mental functioning" in opining that Plaintiff was unable to work, "yet he did not

7  conduct a psychiatric examination."  AR 660.  The opinions based on mental health impairments

8  were therefore conclusory and unsupported by clinical findings, which was a specific and

9  legitimate reason to discount them.  *See Thomas*, 278 F.3d at 957 (An ALJ need not accept a

10  medical opinion that is "brief, conclusory, and inadequately supported by clinical findings.").

11  Plaintiff argues that "[a]s an M.D., Dr. Gritzka was capable of diagnosing mental impairments

12  and limitations."  Dkt. 13 at 10.  However, the ALJ did not discount Dr. Gritzka's opinions based

13  on his credentials, but on the lack of any supporting clinical findings.  Dr. Gritzka conducted no

14  mental status examination and described no mental health findings in his detailed summary of

15  the records he reviewed.  *See* AR 639 ("Physical Examination" only); 633-37.  The only mention

16  of mental health findings is the following: "According to the cover letter accompanying this

17  assignment, the examinee was also treated for major depressive disorder and is on Paxil as noted

18  above.  There is a history of a remote traumatic brain injury and learning disabilities."  AR 637.

19  In other words, the only information Dr. Gritzka received about mental health impairments was

20  in a letter written by Plaintiff's attorney and not included in the Administrative Record.  Plaintiff

21  also suggests that mental impairments can "meld" with physical impairments, but Dr. Gritzka

22  made no such finding.  Dkt. 13 at 10-11.  The ALJ did not err by rejecting Dr. Gritzka's mental

23  health opinions as unsupported by clinical findings.

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 10

### c) Medical Evidence

Incongruity between a medical opinion and the overall medical record can be a specific and legitimate reason to discount the opinion. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (that opinions were "contradicted by other statements and assessments of [claimant's] medical conditions" and "conflict[ed] with the results of a consultative medical evaluation" were sufficient to discount the opinions). Here, the ALJ found that Dr. Gritzka's medical findings were "at odds with" contemporaneous treatment notes. AR 659. This finding is supported by substantial evidence. The ALJ pointed to electrodiagnostic testing showing only mild evidence of cervical radiculopathy or carpal tunnel syndrome; "no significant" neck or arm pain; and normal bowel and abdominal findings. AR 608, 1075, 1293. This is substantial evidence that the overall medical record conflicted with Dr. Gritzka's opinions that Plaintiff's cervical and abdominal impairments, combined with mental impairments, resulted in total disability.

Plaintiff argues over the interpretation of the overall medical record, arguing for example that Dr. Gritzka's finding of positive Phalen's tests should outweigh findings of "no strong electrodiagnostic evidence of carpal tunnel syndrome." AR 608; Dkt. 15 at 4. But it is the ALJ's role to "resolve conflicts in the testimony [and] ambiguities in the record." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). As long as the ALJ's resolution is supported by substantial evidence, as it is here, the Court may not disturb it. *See id.*

Plaintiff also argues that the ALJ substituted her own judgment for that of a medical professional. Dkt. 13 at 10. On the contrary, the ALJ relied on treating doctors' own characterization of their medical findings as benign, normal, or only mildly abnormal.

The Court concludes that conflict with the medical record was a specific and legitimate

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 11

reason to discount Dr. Gritzka's opinions.

### d) Self-Reports

An ALJ may discount a doctor's opinions that are more heavily based on a claimant's non-credible self-reports than on clinical observations. *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014). The ALJ found that "Dr. Gritzka's opinions regarding the claimant's off task behaviors, inability to sustain work, and absenteeism are based on the claimant's self-report of symptoms, which are not fully consistent with the medical evidence of record." AR 659. The ALJ provided no basis for the finding that Dr. Gritzka relied heavily on Plaintiff's self-reports, and there is not substantial evidence for such a finding. *See Ghanim*, 763 F.3d at 1162. The Commissioner argues that the ALJ inferred that Dr. Gritzka relied on self-reports because the medical findings conflicted with his opinions. Dkt. 14 at 6. But this is, first, a *post hoc* reason on which the court cannot rely and, second, merely a rehash of the ALJ's discounting of Dr. Gritzka's opinions as conflicting with the medical record. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 1995) (The Court reviews the ALJ's decision "based on the reasoning and findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking.").

Reliance on self-reports was not a specific and legitimate reason to discount Dr. Gritzka's opinions.

### e) Harmless Error Analysis

Although the ALJ provided some erroneous reasons, the error is harmless because lack of clinical support for mental health opinions and conflict with the overall medical record were specific and legitimate reasons to discount Dr. Gritzka's opinions. *See Molina*, 674 F.3d at 1117 (error harmless if "inconsequential to the ultimate disability determination"). The Court

1  concludes the ALJ did not err by discounting Dr. Gritzka's opinions.

2      **2.    Nancy Armstrong, ARNP**

3      In November 2017, Ms. Armstrong examined Plaintiff and filled out a Physical

4  Functional Evaluation form.  AR 2201.  She diagnosed Plaintiff with neck impairments, COPD,

5  bowel obstruction and chronic diarrhea, bilateral carpal tunnel, and anxiety and depression.  AR

6  2202.  Ms. Armstrong opined that Plaintiff was unable to meet the demands of even sedentary

7  work.  AR 2203.

8      The ALJ gave Ms. Armstrong's opinions "little weight" because they were inconsistent

9  with the medical evidence and Plaintiff's activities, and because "it appears that her opinion

10  regarding the claimant's mental functioning is largely based upon the claimant's subjective

11  report of symptoms" while Plaintiff testified that his mental health symptoms are controlled with

12  medication.  AR 660.  Inconsistency with medical evidence and activities of daily living are

13  germane reasons for discrediting lay witness testimony.  *Bayliss v. Barnhart*, 427 F.3d 1211,

14  1218 (9th Cir. 2005).  Plaintiff's bike riding activity was inconsistent with Ms. Armstrong's

15  opinion of total disability.  And evidence of only mild carpal tunnel syndrome, mild abdominal

16  symptoms and findings, "no significant" neck or arm pain, and Plaintiff's own testimony that his

17  mental health symptoms were well-controlled undermine Ms. Armstrong's opinions that his

18  impairments were completely disabling.  AR 660, 608, 2059, 2061, 1075, 717.  Plaintiff argues

19  the ALJ "cherry-picked" the medical findings, but identifies no records that would demonstrate

20  that the weight of the evidence contradicts the ALJ's conclusions.  Dkt. 13 at 12.  The ALJ's

21  finding that Ms. Armstrong's reduced range of motion measurements were inconsistent with

22  contemporary treatment notes was erroneous, because those notes do not reveal any range of

23  motion measurements.  AR 660, 1072, 1075.  The error is harmless, however, because the ALJ

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 13

provided other germane reasons to discount Ms. Armstrong's opinions. *See Molina*, 674 F.3d at 1117. The Court concludes the ALJ did not err by rejecting Ms. Armstrong's opinions.

### 3. Derek Leinenbach, M.D.

In December 2017, Dr. Leinenbach was asked to review Ms. Armstrong's report and provide his opinions on a Disability/Incapacity Determination check-box form. AR 2230. One checked box indicates that Plaintiff could perform sedentary work, but another checked box indicates that Plaintiff was unable to meet the sedentary requirement to "[s]it for most of the day; walk or stand for brief periods." AR 2231.

The ALJ determined that Dr. Leinenbach's opinions relied heavily on Ms. Armstrong's report and thus gave them "little weight" for the same reasons. AR 660. Inconsistency with the medical evidence and Plaintiff's activities were specific and legitimate reasons to discount Dr. Leinenbach's opinions. *See Ghanim*, 763 F.3d at 1162; *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999). Plaintiff argues that Dr. Leinenbach had an "incentive" to reject disability claims because "his state program" paid disability benefits. Dkt. 13 at 13. This argument fails. Just as ALJs "may not assume that [treating] doctors routinely lie in order to help their patients collect disability benefits," there is no justification to assume that state agency doctors' findings are colored by a desire to save their programs money. *Lester*, 81 F.3d at 832. Absent evidence of actual improprieties, the purpose for which medical reports are obtained is not relevant. *Id.*

The Court concludes the ALJ did not err by discounting Dr. Leinenbach's opinions.

## C. Lay Witnesses' Statements

In February 2014, Plaintiff's roommate, David Wheeler, reported that Plaintiff is easily fatigued, can only do household chores for short periods, cannot lift heavy items at the grocery

store, uses the bathroom at least five times per day, and has serious memory limitations.  AR 280.  In October 2017, Plaintiff's nephew and roommate, Christopher Hanson, reported that Plaintiff is always tired, cannot walk more than a block, needs to change positions every 30 minutes, and needs help remembering appointments and medication and managing bills.  AR 1011.

The ALJ gave these lay witness statements "limited weight" as inconsistent with objective medical findings and Plaintiff's own statements documented in treatment notes.  AR 661.  As discussed above, the medical evidence shows much milder limitations than the lay witnesses described.  Plaintiff argues that "cognitive-memory" test results support the described memory limitations.  Dkt. 13 at 14.  The cited tests addressed cognitive abilities such as reading and arithmetic, not memory, despite Plaintiff's attempt to gloss over the distinction by using the term "cognitive-memory."  AR 271-79.  And, as the ALJ noted, clinical findings show normal memory.  AR 650, 2226.  Plaintiff's argument fails.

The Court concludes the ALJ did not err by discounting the lay witnesses' statements.

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

DATED this 17 day of September, 2019.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE